No. 77,168

STATE OF KANSAS, *Appellee*, v. KELLY L. WILLIAMS, *Appellant*.

(947 P.2d 25)

Opinion filed October 31, 1997.

*Elizabeth Seale Cateforis*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Charles R. Reimer*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals his conviction for first-degree felony murder based upon child abuse as the underlying felony.

Defendant asserts the trial court abused its discretion by (1) declining to instruct on the lesser included offenses of unintentional second-degree murder and involuntary manslaughter, both

reckless and in the commission of a battery or endangering a child, and (2) failing to admit evidence of child abuse by the mother.

At 10:30 a.m. on November 17, 1995, Heather Horrie left her 3-year old daughter Katie in the care of Heather's live-in boyfriend, Kelly Williams, while she went to donate plasma. Williams is 6 feet 4 inches and weighs 240 pounds. Katie, who was small for her age, was 37 inches tall and weighed 23 pounds.

At around 11 a.m., Williams ran across the street to a neighbor's house and told the neighbor that Katie had fallen down the stairs and was not breathing. The neighbor called 911. Williams went back to his residence and then returned to the neighbor's home carrying the unconscious Katie. When Heather returned home, she found Katie being treated by paramedics at the neighbor's house. Williams explained to Heather that Katie had fallen down the stairs.

Katie was transported to the hospital and examined by Dr. Melhorn, a pediatrician with special training in the area of child abuse evaluation. Katie had a fresh bruise over an area of swelling on the back of her head and a fresh bruise on her forehead. Katie had also sustained a 5-inch fracture to her skull beneath the large bruise at the back of her head. In addition, Katie had several old bruises on her abdomen and thighs. During the examination, Dr. Melhorn observed bleeding on the back of both eyes, bleeding in the brain, and severe brain swelling. Katie died the following day. At trial, Dr. Melhorn testified that Katie's injuries were more consistent with a violent shaking and beating than a fall down the stairs.

Williams had first told the EMT who answered the emergency call that he was in the shower when the incident occurred. After Williams overheard Dr. Melhorn report to Heather that Katie's injuries were inconsistent with a fall, Williams told Heather he was leaving to see his other children because he would be going to jail. Williams later told the police that sometime after Heather left, he went upstairs to use the bathroom and heard thumps. When he looked outside the bathroom, he discovered Katie lying at the bottom of the stairs. He also told detectives that Katie was fine when Heather left the residence and when he went upstairs to use the bathroom.

Later, Williams admitted to detectives that Katie had followed him upstairs crying and repeatedly asking for Heather. Williams stated he became frustrated, grabbed Katie, and shook her repeatedly two or three times. Williams demonstrated to the detectives how Katie's head had moved rapidly back and forth, and he surmised that he had shaken her hard. Williams stated that, after the final shake, Katie had looked at him very wide-eyed. Williams denied striking Katie. He claimed that after he had shaken her, he set her down at the top of the stairs, went into the bathroom, heard thumps, came out of the bathroom, and discovered Katie at the bottom of the stairs.

At trial, during the State's presentation of evidence, Dr. Melhorn and Dr. Marcus Nashelsky, a forensic pathologist who had performed the autopsy, indicated that the cause of death was blunt force trauma to Katie's head combined with brain injury resulting from severe repetitive beating and shaking in a violent manner. Both physicians indicated that symptoms would have become apparent as a result of these injuries within minutes. The doctors, both of whom had examined the crime scene, testified that Katie's injuries could not have been caused by a fall down the stairs.

Williams told the jury that he grabbed and shook Katie at the top of the stairs, then shook her again two or three times because she did not stop crying. He testified that he set her down on the floor, went to the bathroom, heard thumps, came out of the bathroom, and discovered Katie at the bottom of the stairs.

Williams was convicted of first-degree felony murder based on child abuse. He appeals, raising two issues.

## I. LESSER INCLUDED OFFENSE INSTRUCTION

Williams first argues that the trial court erred in failing to give lesser included offense instructions on unintentional second-degree murder and involuntary manslaughter, both (1) reckless and (2) in the commission of a battery or endangering a child. The trial court declined to give the requested instructions, ruling that the evidence of the underlying felony of child abuse was not weak or inconclusive.

Normally, the test of whether an instruction on a lesser included offense is required is whether there is any substantial evidence tending to prove that lesser included offense. *State v. Armstrong*, 240 Kan. 446, 459, 731 P.2d 249, *cert. denied* 482 U.S. 929 (1987). When the primary crime is felony murder, this court has used a stricter analysis. A trial court is only under a duty to instruct on a lesser included offense of felony murder when the evidence of the underlying felony is weak or inconclusive. *State v. Sullivan & Sullivan*, 224 Kan. 110, 121, 578 P.2d 1108 (1978). The reason for the rule is that the killer's malignant purpose is established by proof of the collateral felony. *State v. Wilson*, 220 Kan. 341, Syl. ¶ 2, 552 P.2d 931 (1976), *disapproved on other grounds State v. Quick*, 226 Kan. 308, 317, 597 P.2d 1108 (1979).

We addressed whether to apply this rule to first-degree murder by abuse of a child in *State v. Hupp*, 248 Kan. 644, 809 P.2d 1207 (1991). In *Hupp*, the defendant appealed his conviction of first-degree murder based upon a killing committed in the perpetration of the crime of child abuse. The *Hupp* court noted that previously felony murder could not be based on child abuse under the merger rule. Citing *State v. Lucas*, 243 Kan. 462, 759 P.2d 90 (1988), *aff'd on reh.* 244 Kan. 193, 767 P.2d 1308 (1989), the *Hupp* court observed that in *Lucas*, the legislature had been invited by a majority of the court to adopt a felony-murder statute covering the death of a child occurring during the commission of child abuse. 248 Kan. at 651. The *Lucas* court had concluded: "If additional protection for children is desired, the Kansas Legislature might well consider legislation which would make the death of a child occurring during the commission of the crime of abuse of a child, or aggravated battery against a child, first- or second-degree felony murder." 243 Kan. at 473.

Subsequently, the legislature amended the first-degree felony murder statute to include a killing committed in perpetration of abuse of a child. See L. 1990, ch. 100, § 2. The *Hupp* court observed that when the legislature adopted child abuse murder as first-degree murder, it did so using the same language of felony murder; therefore, the legislature intended that the rules concerning lesser included offenses in felony-murder cases apply to child

abuse murder. The court opined that the need for instructions on lesser included child abuse murder should be analyzed in the same manner as for other felony murder. 248 Kan. at 651-52. The first-degree murder statute has been amended several times since the *Hupp* decision so that the current statute (the one applicable to defendant Williams) includes child abuse as an inherently dangerous felony. See K.S.A. 21-3401(b); K.S.A. 21-3436(a)(7).

The analysis of whether the jury should have been instructed on lesser included offenses requires two steps. The first step is to determine whether the evidence of child abuse was so strong that no instruction on lesser included offenses was necessary. If the evidence of the underlying felony was strong, no instruction on the lesser included offenses need have been given. Otherwise, if the evidence is not strong, this court considers whether there was evidence on which a jury could have found the defendant guilty of the lesser included offenses. If there was not such evidence, no instruction on lesser included offenses need have been given. 248 Kan. at 652.

Child abuse is defined as intentionally torturing, cruelly beating, shaking which results in great bodily harm or inflicting cruel and inhuman corporal punishment upon any child under the age of 18 years. K.S.A. 21-3609. Unintentional second-degree murder is murder committed unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life. K.S.A. 21-3402(b). Involuntary manslaughter is the unintentional killing of a human being committed: (a) recklessly; (b) in the commission of, or attempt to commit, or flight from any felony, other than an inherently dangerous felony defined in K.S.A. 21-3436 and amendments thereto, that is enacted for the protection of human life or safety or a misdemeanor that is enacted for the protection of human life or safety, including acts described in K.S.A. 8-1566, 8-1567 and 8-1568 and amendments thereto; or (c) during the commission of a lawful act in an unlawful manner. K.S.A. 21-3404.

Testimony at trial established that Katie was in good condition throughout the morning and that she sustained no head injury before the time Heather left to donate plasma. Williams testified that

he was the only person with Katie after Heather left. He described how Katie looked at him in a startled, wide-eyed manner after he had shaken her and stated that she had one eye shut and one open when he discovered her at the bottom of the stairs. Williams admitted to detectives that he had shaken Katie forcefully several times and demonstrated how her head had gone forward and backward when he shook her.

The unrefuted medical testimony is that Katie died as a result of injuries and swelling to her brain resulting from both a violent shaking and blunt force injuries to her head. Katie's head fracture was consistent with being struck by a blow, by her head hitting a hard object, or by being thrown down the stairs. The two medical experts who visited the scene testified that Katie's injuries were not caused by a fall down the stairs. The medical experts also testified that Katie would have exhibited immediate symptoms from the shaking or blunt force trauma she sustained. They stated she would have appeared dazed or semi-conscious and then lost consciousness either immediately or within a few minutes.

Williams does not dispute the medical testimony, but argues that the "evidence of who might have inflicted the injuries on Katie was inconclusive and conflicting." Williams points especially to other bruises found on Katie's body that appeared to be several days old. In fact, the testimony was clear from Williams himself that Katie was fine when Heather left the home and that Williams was the only person with Katie from that point on. Williams testified that he had seen no one else hit Katie that morning. While there was evidence of other bruises on Katie's body, such as bruises on her stomach, thighs, and arms, both Williams and Heather testified that these bruises existed prior to November 17, 1995. The medical experts did not find that these old bruises contributed to Katie's death.

Under these circumstances, the evidence of the underlying felony, child abuse, was strong, and the trial court did not err in denying defendant's request for lesser included offense instructions.

## II. ADMISSION OF EVIDENCE

For his second issue, Williams argues that the trial court improperly limited his ability to present a defense by excluding evidence of prior abuse and neglect of Katie by her mother, Heather. His allegations included the following examples:

1. On June 15, 1994, an anonymous caller to SRS alleged child abuse and neglect of Katie by Heather, the caller alleged that there were roaches in the home, and that Heather allowed Katie to sleep on the floor and failed to change Katie's diapers. An SRS social worker performed a follow-up visit on August 15 and concluded there was no evidence to support these allegations.

2. On January 17, 1995, Katie was found in the street unattended, taken into protective custody, and treated for severe diaper rash and an ear infection. Heather told SRS that the incident was a result of a misunderstanding with a babysitter. After an investigation by SRS on January 18, 1995, Heather's home was determined to be a safe place for children.

3. On January 25, 1995, the father of Katie's half-sister, Mariah, filed a report alleging he had noticed a burn mark on Mariah's left wrist and burn marks on her left buttocks. After interviewing Heather, SRS closed the case and the allegations were considered unconfirmed.

Relevant evidence is evidence having any tendency in reason to prove a material fact. K.S.A. 60-401(b). Review of the admission or the exclusion of evidence is governed by the harmless error rule. K.S.A. 60-261 provides that no error in either the admission or the exclusion of evidence by the court is a ground for granting a new trial or for setting aside a verdict unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. *State v. Ricks*, 257 Kan. 435, Syl. ¶ 1, 894 P.2d 191 (1995).

In a pretrial hearing on the State's motion in limine regarding the incidents, the trial judge rejected Williams' argument that evidence of these incidents supported an inference that they could

have been secondary or contributing causes of Katie's death. The trial court found that the incidents were too remote in time from the present case, were unconfirmed allegations which could be more accurately characterized as allegations of neglect as opposed to physical abuse, and were not similar to the allegations in the present case.

Evidence is rejected for remoteness when the fact or facts proposed to be established as a foundation from which indirect evidence may be drawn, by way of inference, do not have a visible, plain, or necessary connection with the proposition eventually to be proved. The question of whether to admit or exclude evidence for remoteness is a question of law for the trial judge to determine; the weight to be given the evidence when admitted is for the trier of fact to determine. The question of whether evidence is too remote to be relevant is left to the discretion of the trial judge, whose decision will not be disturbed unless a clear abuse of discretion has been demonstrated. *State v. Griffin*, 246 Kan. 320, Syl. ¶¶ 2, 3, 4, 787 P.2d 701 (1990).

The court also ruled that the incident reports were not relevant, that the value of the reports sought to be admitted was outweighed by the prejudice they would cause to the State, and that admission of the reports into evidence would confuse the jury. Except where otherwise provided in the statutory rules of evidence, the judge may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered. K.S.A. 60-445.

In ruling to exclude the evidence, the trial court stated that defense counsel was free to examine Heather about any knowledge she had regarding the cause of any bruises or injuries found by the doctors. Defense counsel was also free to inquire about Heather's interaction with Katie on the date of the incident.

Williams' theory regarding the exclusion of this evidence is not totally clear from the brief. He appears to contend that evidence of prior abuse should have been admitted to support his defense that Heather committed the abuse which caused the death of Ka-

tie. Because the symptoms would have developed immediately after the trauma, this assertion disregards the undisputed medical evidence that Katie's fatal injuries resulted from violent shaking and multiple blunt force blows to her head on November 17, 1995.

Both the defendant and Heather testified that Katie was fine when Heather left her at home that morning. Both Heather and Williams stated that there was no violence directed toward Katie that morning. Heather testified that prior to leaving home she, at one point, had pushed Katie on the back of the shoulder. Williams admitted that Katie's condition was good until he shook her and found her at the bottom of the stairs. The State points out that, although there was medical evidence of numerous bruises on Katie's body, the undisputed testimony was that the prior bruises were not causally related to Katie's death. The pathologist testified that Katie's death was caused by blunt force trauma with shaking injuries which occurred when the defendant was with Katie.

In support of his contention that exclusion of this evidence was improper, Williams cites *State v. Hamons*, 248 Kan. 51, 805 P.2d 6 (1991). In *Hamons*, where the defendant was charged with first-degree murder, the court found that the trial court's refusal to allow evidence of the timely placement of another individual at the murder scene the evening before the murder, which evidence was linked with an inference of a threat against the victim by this same individual, was error. 248 Kan. at 61. The *Hamons* court held that when the State's case relies heavily on circumstantial evidence to prove commission of a murder, it is error to exclude the circumstantial evidence that someone other than the defendant may have committed the crime. 248 Kan. 51, Syl. ¶ 2.

*Hamons* is distinguishable. Here, evidence of the prior injuries does not support Williams' theory that the child could have or did die as a result of the prior injuries. It also is important to note that Williams' theory of defense was not that another individual had previously inflicted the abuse but that Katie's fatal injuries were caused by a fall down the stairs while in his care. Under the circumstances, the trial court was correct in excluding evidence of alleged prior neglect of the child by the mother.

Affirmed.