No. 84,611

STATE OF KANSAS, *Appellee*, v. JOHN E. SANDIFER, *Appellant*.

(17 P.3d 921)

Opinion filed January 26, 2001.

*Rick Kittel*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*James L. Spies*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the appellant, John E. Sandifer, of his conviction by a jury of one count of felony murder and one count of aggravated robbery.

Sandifer contends the trial court committed clear error when it failed to instruct on intentional second-degree murder as a lesser included offense of felony murder and when it failed to instruct on theft and theft of lost or mislaid property as lesser included offenses of aggravated robbery. He also contends the trial court committed clear error when it failed to fully instruct on the lesser included offense of voluntary manslaughter.

The facts of this case involve the use of crack cocaine and alcohol in large quantities. Sandifer and his family; the victim, John Comstock; and others had been at a party at Sandifer's mother's house. We will not attempt to set forth all of the travels and consumption of illicit drugs and alcohol by the parties, but there appears to be no question that Comstock was intoxicated and Sandifer had purchased and smoked a considerable amount of crack cocaine. San-

difer had also driven Comstock around Kansas City, Kansas, and Kansas City, Missouri, to various places.

Sandifer's wife Sharon told Sandifer that he needed to take Comstock home because he was starting a fight with one of the other men in the house. Sandifer did not want to take Comstock home. Sharon told Sandifer to take Comstock home and then return to pick up her and their daughter. Sandifer told Comstock to get his "stuff," so Comstock grabbed a 12-pack of beer and they left.

On the way home, Comstock tried to explain why he had gotten into an argument at Sandifer's mother's house, but Sandifer did not want to have anything to do with it and turned up the radio in the truck. Sandifer wanted to go to an area where he could use the restroom, but Comstock wanted to go to a liquor store.

Sandifer testified that at that point Comstock reached over and started to choke him while he was driving the truck. Sandifer testified that Comstock choked him so hard that he felt like he was "losing life." Sandifer grabbed a utility knife out of a pocket in the door of his truck and hit Comstock. Sandifer told Comstock to get out of the truck, which he did. Sandifer then got out of the truck and came around to the passenger side but only after grabbing the keys to the truck. Sandifer testified that he thought Comstock had something in his pocket and that he might have been grabbing for something. Sandifer further testified that he was scared and that he grabbed a two-by-four out of the bed of his truck while still holding the utility knife in his hand. Sandifer swung the two-by-four at Comstock's arm so that he would take his hand out of his pocket. Sandifer then threw the two-by-four back in the rear of the truck. Sandifer saw the keys to his truck lying on the ground near the door of his truck. While still holding the knife, Sandifer reached for his keys. Comstock grabbed him and threw him to the ground away from the truck. Sandifer jumped up and started swinging the knife again at Comstock. Comstock fell to the ground. Sandifer grabbed his keys but Comstock grabbed at his legs. Sandifer kicked at Comstock's head in order to get away. Sandifer testified that he saw some money on the ground, thought it was his, and picked it up. Sandifer had approximately $28 on his person at the time of

the fight, but later realized that he had picked up around $300. When Sandifer left the area, Comstock was still alive.

On the night of April 30, 1999, Kerry Milton was working at her job at a water treatment plant in an industrial area of Kansas City, Kansas. At about 10:15 p.m., Milton looked out the window and saw the headlights of a pickup truck about 200 or 300 yards away. After the truck came to a stop, the driver's door opened and Milton saw the driver exit the truck. Milton saw the driver walk to the passenger side of the truck, disappear into the darkness, then return to the back of the truck. The driver then placed a long straight object into the back of the truck. Milton thought that the driver was a white male, but was not certain. At 10:27 p.m., the truck left the area.

Milton got off work at 11 p.m., about a half an hour after she saw the truck. Milton drove past the area where she spotted the truck. Milton saw the white socks and black shoes of a body by the side of the road near where the truck had stopped. Police officers found the body of a man whose throat had been slashed. The officers determined that the deceased was Comstock. After interviewing Gary Comstock, the victim's brother, the officers determined that they needed to locate Sandifer, as Comstock had last been seen with Sandifer leaving the party at Sandifer's mother's house.

Sandifer testified that after his altercation with Comstock he returned to his mother's house. When he discovered that he had over $300 in his pocket, he used some of the money to buy more crack cocaine. Sandifer then picked up his wife and daughter and went home at about 11:30 p.m.

When Sandifer got home, he smoked the crack cocaine. Sandifer testified that he then noticed blood all over his shoes. Sandifer smoked crack cocaine until about 2:30 a.m., took a bath, and then went to look for Comstock. Sandifer did not want to go too close to the area where the fight occurred, however. Sandifer then bought some more crack cocaine, went home, and smoked it. At about 7 a.m., Sandifer's wife woke him up and asked him what was wrong. Sandifer described the events to his wife. Sandifer then went to work, telling his wife that he would be home for lunch.

On his lunch hour, Sandifer bought more crack cocaine. At about 1:30 p.m., Sandifer received a phone call from the police informing him that Comstock was dead.

Detective Greg Lawson interviewed Sandifer at the police station in Kansas City, Kansas. At the time of the interview, Sandifer was not considered a suspect. Lawson asked Sandifer for consent to search his truck, to which Sandifer agreed. Detective William Lee Howard, Jr., immediately searched Sandifer's truck and noticed what appeared to be blood on the passenger side of the truck and on a baby seat sitting in the middle of the truck's bench seat. Sandifer was immediately advised of his rights and was told that he was considered a suspect. Sandifer signed a waiver of his rights and agreed to talk further with the detectives. Sandifer initially denied any involvement in Comstock's death. Sandifer told the detectives that he and Comstock had gotten into a fight because Comstock had loaned Sandifer $100 to buy crack cocaine and that Sandifer wanted to borrow another $100 to buy crack cocaine. Sandifer further told the detectives that he had driven to "the bottoms" in Kansas City, Kansas, to go to an old truck stop and use the restroom. When the truck stopped, Comstock and Sandifer began fighting in the truck. Sandifer described how he had hit Comstock with the utility knife and that they continued fighting until Comstock fell to the ground. Unlike his testimony at trial, Sandifer told the detectives during the first interview that he had reached into Comstock's pocket to remove the money.

Sandifer was interviewed a second time a few days later. Again, Sandifer was advised of his rights and again he waived them. During the second interview, Sandifer admitted that he had spent the money he had taken from Comstock on crack cocaine, groceries, and other items. An audiotape of both interviews was played for the jury.

As a result of statements made by Sandifer during his interviews with the police, officers were dispatched to the apartment complex where Sandifer lived to look in a trash dumpster for the knife, clothing, and other articles which might have been related to the homicide. Officers found a ball cap which belonged to Comstock

and a pair of bloody shoes and socks which belonged to Sandifer. Officers were not able to locate the knife.

Dr. Donald Pojman, a forensic pathologist, testified at trial that he had conducted an autopsy on Comstock and that Comstock had died from multiple wounds to his neck. The wounds to his neck did not touch the carotid artery or jugular vein, although they were enough to cause serious blood loss and eventually death. Comstock had superficial wounds to his chest and suffered blunt force injuries to his head which, in the opinion of Pojman, were made by a flat object. Comstock also had multiple minor wounds to his lip, cheek, and scalp. Pojman did not find any defensive wounds on Comstock's hands or arms. Pojman testified that no illegal drugs were found in Comstock's system but that his blood alcohol level was .345.

Sandifer was charged with one count of felony murder with aggravated robbery as the underlying felony, and one count of aggravated robbery. Sandifer was found guilty of both counts and sentenced to consecutive terms of life imprisonment for the felony murder without possibility of parole for 15 years and 51 months for the aggravated robbery. This appeal follows.

## I. LESSER INCLUDED OFFENSES OF FELONY MURDER

K.S.A. 1999 Supp. 22-3414(3) governs the standard of review on appeal when considering whether a jury instruction should have been given. Effective July 1, 1998, K.S.A. 1999 Supp. 22-3414(3) governs whether an instruction should have been given for a *lesser included offense* as well. It sets forth:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

Sandifer requested that the court give instructions for all the lesser included offenses of homicide at the instructions conference.

In *State v. Bell*, 266 Kan. 896, 915, 975 P.2d 239 (1999), this court discussed whether a trial court should instruct the jury on a lesser included offense and stated:

"It is not the function of an appellate court to determine whether the factual possibilities mentioned at trial should prevail. Rather its function is to exercise judicial judgment as to whether there was sufficient evidence in the record to necessitate an instruction of the lesser offense. Such a determination is made from the evidence as a whole and while in a given case the defendant's testimony alone may be sufficient to require such an instruction, it may also fall short of [the requirement] to instruct. The test is a factual one based upon the evidence as a whole."

A criminal defendant has a right to an instruction on all lesser included offenses supported by the evidence at trial so long as (1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with the defendant's theory and (2) the evidence at trial did not exclude a theory of guilt on the lesser offense. *State v. Moncla*, 262 Kan. 58, 73-74, 936 P.2d 727 (1997).

This court discussed in *State v. Williams*, 263 Kan. 134, 137-38, 947 P.2d 25 (1997), the fact that appellate courts apply a different analysis when determining whether lesser included offense instructions should be given when the crime charged is felony murder. We stated:

"Normally, the test of whether an instruction on a lesser included offense is required is whether there is any substantial evidence tending to prove that lesser included offense. [Citation omitted.] When the primary crime is felony murder, this court has used a stricter analysis. A trial court [should only] instruct on a lesser included offense of felony murder when the evidence of the underlying felony is weak or inconclusive. [Citation omitted.] The reason for the rule is that the killer's malignant purpose is established by proof of the collateral felony. [Citations omitted.]

. . . .

"The analysis of whether the jury should have been instructed on lesser included offenses requires two steps. The first step is to determine whether the evidence [of the underlying felony] was so strong that no instruction on lesser included offenses was necessary. If the evidence of the underlying felony was strong, no instruction on the lesser included offenses need have been given. Otherwise, if the evidence is not strong, this court considers whether there was evidence on which a jury could have found the defendant guilty of the lesser included offenses. If there was not such evidence, no instruction on lesser included offenses need have been given. [Citation omitted.]" 263 Kan. at 137-38.

See also *State v. Rayton*, 268 Kan. 711, 723, 1 P.3d 854 (2000) (noting that an instruction on a lesser included offense where the

crime charged is felony murder is not necessary unless the evidence of the underlying felony is weak or inconclusive); *State v. Altum*, 262 Kan. 733, 737, 941 P.2d 1348 (1997) (noting that the "established rule" is that a lesser included instruction is not required in a felony-murder case where the evidence of the underlying felony is not weak or inconclusive); *State v. Alderson*, 260 Kan. 445, 460, 922 P.2d 435 (1996) (Kansas has an exception to the lesser included instruction rule where the crime charged is felony murder); *State v. Holt*, 260 Kan. 33, 37, 917 P.2d 1332 (1996) (noting that the felony-murder doctrine "is a distinct legal theory from the doctrine of lesser included offenses"); *State v. Strauch*, 239 Kan. 203, 218, 718 P.2d 613 (1986) (noting that the rule requiring instructions for lesser included offenses does not apply for felony-murder charges and that lesser included offense instructions are only required when the evidence supporting the underlying felony is weak, inconclusive, or conflicting).

The question in this case is, therefore, whether the evidence supporting the underlying felony of aggravated robbery was weak, inconclusive, or conflicting. We hold that it was not. Although Sandifer testified at trial that he picked up the money off the ground thinking it was his, Sandifer told detectives during two different interviews that he took the money out of Comstock's pocket as he lay on the ground beside the truck after having beaten him with a two-by-four and cutting him several times with a utility knife. The jury listened to audio recordings of Sandifer's interviews with the detectives as well as Sandifer's live testimony during the trial.

The evidence supporting the underlying felony of aggravated robbery was not weak, inconclusive, or conflicting, even though Sandifer gave two different accounts of how he took the money. Because the evidence supporting the underlying felony was not weak, inconclusive, or conflicting, the trial court was not required to instruct the jury on the lesser included offenses of either intentional second-degree murder or voluntary manslaughter arising from a "sudden quarrel."

## II. LESSER INCLUDED OFFENSES OF AGGRAVATED ROBBERY

Sandifer argues that the trial court erred when it failed to instruct the jury on theft or theft of lost or mislaid property as a lesser included offense of aggravated robbery. Two questions arise in considering this issue. First, whether theft or theft of lost or mislaid property is a lesser included crime of aggravated robbery and, second, whether the trial court erred in failing to give an instruction on the lesser included offenses.

The question of whether a crime is a lesser included offense is a question of law over which this court has unlimited review. *State v. Saiz*, 269 Kan. 657, 661, 7 P.3d 1214 (2000); *State v. Belcher*, 269 Kan. 2, 4, 4 P.3d 1137 (2000); *State v. Horn*, 20 Kan. App. 2d 689, 690, 892 P.2d 513, *rev. denied* 257 Kan. 1094 (1995)

Sandifer did not request any lesser included instructions for the aggravated robbery charge. When a party does not request that an instruction be given, we review this issue under the clearly erroneous standard. The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial court error had not occurred there was a real possibility the jury would have returned a different verdict. *State v. DeMoss*, 244 Kan. 387, 391-92, 770 P.2d 441 (1989).

K.S.A. 1999 Supp. 21-3107 was amended on July 1, 1998, and governs whether a crime is a lesser included crime. It sets forth in pertinent part:

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:

(a) A lesser degree of the same crime;

(b) a crime where all the elements of the lesser crime are identical to some of the elements of the crime charged;

(c) an attempt to commit the crime charged; or

(d) an attempt to commit a crime defined under subsection (2)(a) or (2)(b)."

Sandifer was charged with aggravated robbery. K.S.A. 21-3426 sets forth the elements for robbery: "Robbery is the taking of property from the person or presence of another by force or by threat of bodily harm to any person."

K.S.A. 21-3427 defines an aggravated robbery as a robbery "committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery."

The crime of theft is set forth in K.S.A. 21-3701, which states in pertinent part:

"(a) Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:
(1) Obtaining or exerting unauthorized control over property;
(2) obtaining by deception control over property;
(3) obtaining by threat control over property; or
(4) obtaining control over stolen property knowing the property to have been stolen by another."

K.S.A. 21-3701(a) describes different types of theft. Not all of them are lesser included offenses of robbery. *State v. Davis*, 256 Kan. 1, 23, 883 P.2d 735 (1994). K.S.A. 21-3701(a)(2) and (4) are not applicable here since Sandifer does not contend that either of those types of theft are supported by the evidence. This court has previously held that "obtaining by threat control over property," pursuant to K.S.A. 21-3701(a)(3), is not a lesser included crime of robbery or aggravated robbery. See *State v. Hegwood*, 256 Kan. 901, 904, 888 P.2d 856 (1995) (holding that theft by threat is not a lesser included offense of robbery); *State v. Blockman*, 255 Kan. 953, 961, 881 P.2d 561 (1994) (holding that theft by threat or extortion is not a lesser included offense of robbery); *State v. Marbley*, 20 Kan. App. 2d 34, 39, 882 P.2d 1004 (1994) (applying *Blockman* and holding that theft by threat is not a lesser included crime of robbery), *rev. denied* 256 Kan. 997.

Theft, pursuant to K.S.A. 21-3701(a)(1), however, is a lesser included crime of robbery and aggravated robbery. See *State v. Long*, 234 Kan. 580, 591-92, 675 P.2d 832 (1984) (holding that theft is a lesser included crime of robbery as both require the "unlawful taking of property of another" even though robbery is a crime against a person while theft is a crime against property), *disapproved on other grounds State v. Keeler*, 238 Kan. 356, 710 P.2d 1279 (1985). See also *State v. Lewis*, 256 Kan. 929, 934-35, 889 P.2d 766 (1995) (applying *Long* and considering whether there was

evidence to support the giving of the lesser included instruction of theft where the defendant was charged with aggravated robbery); *State v. Sutherland,* 248 Kan. 96, 103, 804 P.2d 970 (1991) (referring to *Long* and holding that theft, as described in what is now K.S.A. 21-3703(a)(1), is a lesser included crime of robbery); *State v. Holloman,* 17 Kan. App. 2d 279, 288, 837 P.2d 826 (1992) (theft is a lesser included offense of robbery), *rev. denied* 251 Kan. 940.

Theft of lost or mislaid property is governed by K.S.A. 21-3703, which sets forth in pertinent part:

"Theft of lost or mislaid property is failure to take reasonable measures to restore lost or mislaid property to the lawful owner by a person who has obtained control of such property, who knows or learns the identity of the owner thereof, and who intends to deprive the owner permanently of the possession, use or benefit of the property."

Theft of lost or mislaid property is also a lesser included offense of robbery and, therefore, aggravated robbery. See *State v. Colbert,* 221 Kan. 203, 207, 557 P.2d 1235 (1976) (addressing the issue of whether an instruction on theft of lost or mislaid property was supported by the evidence where defendant was convicted of aggravated robbery).

Because Sandifer did not argue at trial that instructions for the lesser included offenses of theft and theft of lost or mislaid property should have been given, we are required to review this issue under a clearly erroneous standard. We hold that, after reviewing the evidence, there is not a real possibility that the jury would have returned a different verdict had it had the opportunity to consider either theft or theft of lost or mislaid property. "Theft" is not committed where there is evidence the thief has used force to gain possession of the property. *State v. McKinney,* 265 Kan. 104, 114, 961 P.2d 1 (1998). There was substantial evidence that Sandifer swung at Comstock with the utility knife, cutting him on the neck and face, which ultimately resulted in Comstock's death. There was also strong evidence that proved that Sandifer swung and hit Comstock with a two-by-four. The use of both the utility knife and the two-by-four against Comstock would have prevented the jury from finding Sandifer guilty of anything but aggravated robbery. See *State v. Evans,* 251 Kan. 132, 137-38, 834 P.2d 335 (1992) (holding

that the trial court did not err in not giving instruction on theft as there was no real possibility that the jury would have returned a guilty verdict of anything other than aggravated robbery because there was strong evidence that the defendant's actions were violent in nature); *Sutherland,* 248 Kan. at 103 (no error where there was "no question" that deadly force was used against the victim; therefore, the jury could not have reasonably found the defendant guilty of anything other than aggravated robbery); *State v. Patterson,* 243 Kan. 262, 265-68, 755 P.2d 551 (1988) (holding that lesser included offense instruction on theft was not required as there was no real possibility that the jury would have convicted the defendant of anything other than aggravated robbery); *State v. Huff,* 220 Kan. 162, 167, 551 P.2d 880 (1976) (holding that the trial court did not err in refusing to give a lesser included instruction of theft where the evidence was strong that the defendant was armed and used force to take in excess of $500). Additionally, Sandifer told police on two occasions that he had taken the money out of Comstock's pocket after the use of the above-described force.

The trial court did not err when it did not give instructions for either theft or theft of lost or mislaid property as lesser included offenses of aggravated robbery.

Affirmed.