NOT DESIGNATED FOR PUBLICATION

Nos. 113,665
113,666

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES A. VAUGHAN JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed September 15, 2017. Affirmed.

*James A. Vaughan*, appellant pro se.

*Jennifer S. Tatum*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM:  James A. Vaughan Jr. was convicted by a jury of one count of aggravated robbery and one count of kidnapping for his involvement in crimes which took place on March 15, 2014. He was sentenced to a controlling sentence of nearly 20 years in prison. Vaughan appeals his convictions raising numerous trial court errors. Finding no error warranting reversal, we affirm.

1

Vaughan entered Advantage America, a cash advance/payday loan business in Wyandotte County, Kansas, to inquire about getting a title loan. The assistant manager, Heather Alexander, was working alone that day. While assisting another customer, she greeted Vaughan and informed him that they did not provide title loans; she gave him the name of another business down the road that might assist him, and Vaughan left.

Approximately 15 minutes prior to closing, Vaughan returned to Advantage America where Alexander was now alone. Vaughan inquired about a payday loan or other cash advance but, since it was so late in the day, Alexander told him she would not be able to process the loan until Monday when she could verify his account with his bank. She did not immediately recognize Vaughan as the same man from the morning because he was wearing different clothes. Over the next 15 minutes, Vaughan engaged Alexander in conversation about the other types of services Advantage America offered. Vaughan suggested it was probably close to closing time and speculated that Alexander was probably ready to go home for the day. Alexander looked down at her computer to check the time and when she looked up, Vaughan had put on his sunglasses and was pointing a black handgun with a 5 to 7 inch barrel at her face and chest. He was also wearing a ball cap and a dust mask on top of his hat, but he did not pull the mask down to cover his face. While pointing the gun at Alexander, Vaughan stated, "'I'm sorry. I don't wanna do this.'"

Alexander put her hands up "as an instinct." She testified, "I was scared for my life. I've never had a gun pointed at my face before." Vaughan told her not to push any alarms, to lock the front door, and to flip the closed sign on the door; Alexander did as she was told. He told her he knew there was a safe in back behind the partition and that she had the combination; he told her to take him to the safe. She testified that she did what he told her to do because "[t]here was a gun pointed at me and he told me to."

Vaughan was behind Alexander as they walked from the front of the shop to behind the partition. There were no security cameras behind the partition. The safe was in a lower cabinet, so Alexander opened the cabinet, entered the code, opened the safe, and stepped back to allow Vaughan to access the contents. Alexander was approximately 2 to 3 feet behind and to the side of Vaughan; as he went through the safe, he would look back and forth from the safe to her and ask questions such as: "'Is this all the money that's in there?'" and "'Is there anything else?'" As Vaughan checked another deposit bag in the safe, he asked if that was all the money there was; she replied that was all of the money as it had been a slow Saturday.

There was not an opportunity for Alexander to leave because there was never a very long period when his back was to her; he was "within touching distance of me"; she did not feel free to go or move further away; and she did not try to flee out the back door because "I was scared. I wasn't going to make the situation any worse." There was never a point when she did not feel in danger. Alexander believed Vaughan still had the gun out and within reach while he was looking through the safe. Alexander asked Vaughan to "please just don't hurt" her, to which he replied that if she gave him the money, he would not hurt her. He took the currency from the safe but left the bags.

After emptying the safe of the currency, Vaughan asked if there was a bathroom and told Alexander to go inside it. Alexander testified that she was unsure why he wanted her to go into the bathroom, "I didn't know what was going to happen . . . . I wasn't sure why he needed me to go to the bathroom." Before the door closed, Vaughan asked her how to access the money in the front cash drawer and she told him; he then told her to count to 60, and he said, "[I]f I exited the bathroom before I count to sixty, that [he] or his partner . . . would shoot me." Alexander feared for her safety while she was in the bathroom because of Vaughan's threat to shoot her if she came out too soon. Alexander was in the bathroom when Vaughan took the money out of the front cash drawer.

3

While in the bathroom, Alexander counted to at least 60 because she started over several times out of fear she was counting too fast. When she thought she had waited long enough, she slowly opened the bathroom door, yelled to see if anyone was there, and then slowly walked out, looking under counters. Once she believed she was alone, she immediately went to the front of the store, locked the door, pressed the panic button, and called 911. According to video footage, it was approximately 3:08 p.m. when she came out of the bathroom.

Vaughan took over $1,100 from the safe and over $200 from the front drawer, for a total of approximately $1,378. There were two security cameras in the front of the shop, and the police took the recorded footage from the robbery. There is no dispute that the gun used, later recovered by police, was actually a Crossman air gun or pellet gun. Police did not attempt to test-fire it. It was only upon close examination that it was identified as such, because the gun looked like a Smith & Wesson 9-mm handgun.

Vaughan's defense consisted exclusively of his testimony. He testified at trial that he needed money to cover drug and gambling debts, and he planned to get a "bad check" loan from the shop. He tried, unsuccessfully, other avenues to generate funds, such as credit card applications. He admitted that it was him on the video footage from 10:30 that morning, and testified that he was not successful at getting the title loan at the location Alexander sent him to that morning. Vaughan testified that between his visits to Advantage America that day, he also went to the library to email people about getting some money. He had an evolving plan for acquiring the money he needed: a title loan, credit cards, a check loan, or a "snatch and grab," and then pulling the gun. He claimed he did not specifically target Advantage America but "I knew [at] some point in that day I was going to get money. I knew I was going to steal some money. I knew that." He testified that the reason he grabbed the BB gun was because he intended to show it during his escape to scare people away from attempting to stop him.

4

When he went back to Advantage America at 2:45 p.m., he planned to either get a loan or to do a "snatch and grab" of the money in the drawer. He knew the shop closed at 3 p.m. on Saturdays. Vaughan admitted that he bought the dust mask at a pharmacy between his visits to Advantage America and the purpose of the mask during his second visit was to hide his face, but he forgot to pull it down. He asked his niece to bring him his bag with a change of clothes. The bag also contained the BB gun. He changed clothes in a parking lot between his visits to Advantage America. He testified, "I knew I was going to more than likely pull the BB pistol . . . so I could get the money . . . ." Vaughan testified that he was not going to hurt Alexander, "[A]ll I wanted to do was steal the money."

Vaughan testified that the BB gun he used that day was not functional because he had rendered it inoperable. He admitted that he concealed the gun in the waist of his pants and wore a baggy shirt so people would not see it, "[S]o when I pulled it out I was intending to show her, to scare her so I could just steal the money." He testified that he was sorry he was planning to scare her. He claimed that Alexander "took over" after he pointed the gun at her, and he credited her job training. Vaughan testified that while walking back to the safe, he put the gun back in his pants so Alexander would not be so scared. He said that he told her that he had a friend outside and not to follow him because the friend wouldn't like it, and he testified, "I don't remember if I ever told her I was going to shoot her." He said that the reason he took the BB gun in the store was because he knew it was incapable of firing.

Once he was in the safe, Vaughan testified that Alexander asked him what he wanted her to do next, "[Y]ou could see she was still—I mean, anybody would be scared still, even though we talked about things, I thought she was still scared." Vaughan claimed that he suggested she go into the bathroom and count to 60 and not follow him and that is when she said, "[P]lease don't hurt me." Vaughan testified that Alexander went

5

into the bathroom and that is when he took the money from the safe and the front drawer. He also attempted to find the video footage before he left.

Vaughan was convicted as charged with one count of aggravated robbery for unlawfully and knowingly taking property from the presence of another by threat of bodily harm while armed with a dangerous weapon and one count of kidnapping for unlawfully taking or confining a person by threat with the intent to hold such person to facilitate flight or the commission of a crime. K.S.A. 2013 Supp. 21-5420(b)(1), (c)(2); K.S.A. 2013 Supp. 21-5408(a)(2), (c)(1). He was sentenced to a controlling prison sentence of 233 months.

Vaughan filed a timely notice of appeal.

ANALYSIS

*The evidence, when viewed in the light most favorable to the State, was sufficient to convince a reasonable factfinder that Vaughan was guilty of aggravated robbery.*

Vaughan was ultimately charged with unlawfully taking property from the presence of another by threat of bodily harm while "armed with a dangerous weapon, to-wit: firearm." The instruction to the jury included similar language. Vaughan contends that the evidence presented at his trial was insufficient to prove beyond a reasonable doubt that he committed aggravated robbery because he did not use a firearm during the course of the crime.

When the sufficiency of the evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v.*

6

*Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

To be found guilty of aggravated robbery, the State was required to prove beyond a reasonable doubt that Vaughan knowingly took property from the presence of Alexander by force or threat of bodily harm while armed with a dangerous weapon. K.S.A. 2013 Supp. 21-5420(b)(1). When the State added the language "to wit:  firearm" to the information and the instructions, Vaughan argues that it became an essential element of the crime which must be proven to the jury beyond a reasonable doubt. Our law is clear that "'[a] weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is . . . not a firearm.'" *State v. Craddick*, 49 Kan. App. 2d 580, 584-85, 311 P.3d 1157 (2013); see also K.S.A. 2013 Supp. 21-5111(m) (firearm is any weapon designed or having the capacity to propel a projectile by force of an explosion or combustion).

Here with the exception of the term firearm, the complaint and instructions are worded in the language of the statute. Kansas charging documents need only "allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant." *State v. Dunn*, 304 Kan. 773, Syl. ¶ 2, 375 P.3d 332 (2016). Moreover, "[w]here an indictment or information contains immaterial and unnecessary allegations which could have been omitted without affecting the charge, such allegations may be treated as surplusage and disregarded." *State v. Sharp*, 202 Kan. 644, Syl. ¶ 2, 647-48, 451 P.2d 137 (1969) (finding that language in the complaint describing that the crime of first-degree robbery was committed "'with deadly and dangerous weapons, to-wit:  their fists'" is surplusage because all elements of the crime were proven at trial). The failure to prove surplusage at trial is not a fatal defect. *State v. Barncord*, 240 Kan. 35, 41, 726 P.2d

7

1322 (1986); see also *State v. Martinez-Perez*, No. 109,383, 2014 WL 2401660, at *4 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1017 (2015).

We find that the addition of the language "to wit:  a firearm" was mere surplusage and does not result in reversal of Vaughan's conviction. The evidence was sufficient to convict Vaughan of the charged crime. He admitted at trial that he intended to take money from the presence of Alexander and used the gun to scare her into cooperating with him. Even though a BB or pellet gun is not in fact a firearm and in this case was inoperable to boot, Kansas uses a subjective test to determine if a weapon is a dangerous weapon under the aggravated robbery statute. The test requires we look at the intent of the robber and the reasonable belief of the victim. "If the robber intends for a victim to believe the item used in the robbery is a dangerous weapon and the victim reasonably believes such object to be a dangerous weapon, then the item is considered a dangerous weapon." *State v. Childers*, 16 Kan. App. 2d 605, Syl. ¶ 2, 830 P.2d 50 (1991) (holding that a toy gun could be considered a dangerous weapon under the subjective test). "An item may be considered a dangerous weapon under the subjective test even though it is incapable of inflicting serious bodily harm on the victim." 16 Kan. App. 2d 605, Syl. ¶ 3.

Based on the evidence admitted at trial, when taken in the light most favorable to the State, it was reasonable for the jury to believe Vaughan's testimony, i.e., that he used the gun to frighten Alexander—understanding that she would think it was a real gun; that he intended for her to believe she would be shot and harmed if she did not follow his instructions; and that, in following his instructions, he intended for her to allow him to access the money in the safe and front drawer because of her fear. It was also reasonable for the jury to believe Alexander's testimony when she said she feared for her life while the gun was being pointed at her.

While Vaughan may not have intended to physically harm Alexander, and while the gun may have been incapable of firing at her, he relied on her ignorance of that fact

and he relied on her reasonable fear caused by his pointing the gun at her. There is no question from Vaughan's own testimony and the record as a whole that he intended for Alexander and, indeed, anyone to whom he showed the gun, to believe it was real and dangerous. It was not unreasonable for the jury to determine that Vaughan used a reasonably perceived dangerous weapon in the commission of his crime. There was sufficient evidence for the jury to convict Vaughan of aggravated robbery.

*The failure to commit an oral amendment to writing did not deprive the court of jurisdiction.*

At the close of its case-in-chief, the State orally moved to amend the information charging Vaughan with aggravated robbery to change "by force" to "by threat of bodily harm" to conform to the evidence and to the trial court's proposed Jury Instruction No. 5 regarding aggravated robbery. Vaughan objected to the amendment, so he has properly preserved this issue for appeal.

Under K.S.A. 22-3201(e), "[t]he court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." Whether to allow an amendment to a charging document is subject to the district court's discretion. *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006). Discretion is abused only when no reasonable person would take the view adopted by the district court. The defendant bears the burden of establishing such an abuse of discretion. 281 Kan. at 205. In addition, although not within the plain language of the statute, our Supreme Court has indicated that "[t]he amendment to the complaint or information may be shown by interlineation on the complaint or information, by the filing of an amended complaint or information, or by a journal entry stating the amendment to the complaint or information." *State v. Rasch*, 243 Kan. 495, 501, 758 P.2d 214 (1988). This judicial rule seems consistent with K.S.A. 2016 Supp. 22-2202(l) which refers to the information as a written document.

9

Vaughan contends that purely oral amendments to the information are not allowed by the statute and by failing to amend the information by interlineation, by filing an amended information, or by ensuring that a journal entry is on file stating the amendment, there was no written information upon which to base the charges. Accordingly, the court "was without authority" and his convictions must be reversed. The State does not allege that the oral amendment was reduced to writing, and we were unable to find anything in the record on appeal to suggest otherwise.

First, it is clear that the judge did not abuse his discretion by allowing an amendment of the information. To be found guilty of aggravated robbery, the State was required to prove beyond a reasonable doubt that Vaughan took property from a person or the presence of another by "force or by threat of bodily harm." K.S.A. 2013 Supp. 21-5420(a). Vaughan was charged with the same crime both before and after the amendment. The evidence was the same both before and after the amendment. In addition, the amendment occurred the day before Vaughan put on his case in chief. Although Vaughan objected to the amendment, no reason for the objection was provided. He did not request a continuance to develop an alternative defense or strategy. See *State v. Calderon-Aparicio*, 44 Kan. App. 2d 830, 847-50, 242 P.3d 1197 (2010) (amendment of a complaint to charge alternative theory of same crime does not constitute charge of different crime; when evidence is the same under both theories and defendant cannot specify how his defense would have changed, no substantial prejudice due to amendment). There is no indication that the amendment to conform to the evidence in any way prejudiced Vaughan's defense.

Next, oral amendments to an information are not prohibited by K.S.A. 22-3201(e). In fact, our Supreme Court has approved the use of oral amendments.

> "When the defendant and his attorney are present and permission is obtained
> from the judge, the State may orally amend the complaint or information any time before

10

the verdict or finding, if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. When the jury has been properly instructed on the elements of the crime, a complaint or information which the State has orally amended to correct a deficiency is valid unless the substantial rights of the defendant are prejudiced." *Rasch*, 243 Kan. at 501.

An oral amendment made during trial with the defendant and defense counsel present is effective immediately. *State v. Nunn*, 244 Kan. 207, 224, 768 P.2d 268 (1989).

And finally, in addressing whether a failure to memorialize an oral amendment requires us to reverse Vaughan's conviction, we are required to examine: "(1) whether the amendment itself was appropriate, meaning no additional or different crime was charged and the substance of the amendment was not prejudicial, and (2) whether the failure to memorialize the amendment was prejudicial to the defendant." *State v. Dupree*, 304 Kan. 377, Syl. ¶ 3, 373 P.3d 811 (2016); see also *State v. Davis*, 283 Kan. 767, 769, 156 P.3d 665 (2007) (failure to file an amended complaint after oral motion does not deprive court of jurisdiction over the defendant); *State v. Switzer*, 244 Kan. 449, 457, 769 P.2d 645 (1989) (failure to memorialize an oral motion to amend the complaint is not, in itself, prejudicial to the defendant and does not constitute reversible error). In this case, we have already found that the amendment itself was not prejudicial in that it did not charge a different crime. And Vaughan does not assert that his case was prejudiced by the amendment. He does not claim that the amendment caused a change in his defense or strategy. The State's amendment was clear and caused no confusion. It happened during the instruction conference with Vaughan and his attorney present. Vaughan was present to hear and witness the instructions, which did include the amended language, as they were given to the jury.

In sum, we find that the district judge did not abuse his discretion in allowing the State to orally amend the information and the court was not deprived of jurisdiction by the failure of the State to commit the amendment to writing.

11

*The district court did not err in the giving or failure to give several instructions.*

Vaughan contends that the district court erred in giving the jury an instruction on the lesser included offense of robbery, in not giving an instruction on the lesser included offense of theft, and in giving an erroneous aggravated robbery instruction.

When the giving of or the failure to give a jury instruction is challenged on appeal, we embark on a multi-step analysis. First, we determine whether the issue has been properly preserved for review. Our review of this factor is unlimited. Next, we consider whether the instruction was legally appropriate. Again, our review of this factor is unlimited. Third, we examine whether the instruction is factually appropriate. To do this, we examine whether there was sufficient evidence viewed in the light most favorable to the requesting party to support the giving of the instruction. *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016). We can find the evidence factually sufficient even if a defendant's testimony was all that supported the defense. *Dupree*, 304 Kan. at 397. Finally, if the district court erred, we must determine whether the error was harmless. *Fisher*, 304 Kan. at 257. To determine harmlessness, we review the entire record and determine de novo if the fundamental failure related to the instruction was harmless. See 304 Kan. at 260; *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011). Our harmlessness analysis is straight forward. To reverse a conviction on the basis of instructional error, we must be firmly convinced that the jury's verdict would have been different had the district judge given the missing instruction or not given the objectionable instruction. See *Fisher*, 304 Kan. at 260.

Our examination of harmlessness, however, varies based upon whether the party requested the instruction at trial or objected to an instruction that was given. If the defendant requests an instruction at trial or objects at trial to an instruction that is given, the burden to show harmlessness shifts to the party benefitted by the error, usually in a

12

criminal case, the State. See *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012). But, if the defendant did not specifically request an instruction or if the defendant did not object at trial, our standard for reviewing harmlessness changes. Although we allow the issue to be raised for the first time on appeal, the burden to show that the court's decision was "clearly erroneous" rests with the defendant. See K.S.A. 2016 Supp. 22-3414(3); *State v. Solis*, 305 Kan. 55, 65, 378 P.3d 532 (2016); *Williams*, 295 Kan. at 516.

With those standards in mind, we review Vaughan's allegations of error.

*Failure to give a lesser included offense instruction for theft*

Vaughan asserts that the district court should have given a lesser included offense instruction for felony theft. A court is required to instruct on a lesser included offense only if (1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict according to that theory and (2) the evidence does not exclude a theory of guilt on the lesser included offense. *State v. Simmons*, 282 Kan. 728, 741, 148 P.3d 525 (2006).

For the first prong of our appellate review of claimed instructional error, we note that the defense requested a theft instruction, but the request was denied. Accordingly, the issue was properly preserved for appeal and if we determine it was error for the district court to fail to give the requested instruction, the State would bear the burden of establishing harmlessness.

Next, theft is a lesser included offense of aggravated robbery. *State v. Plummer*, 295 Kan. 156, 164, 283 P.3d 202 (2012). So, a theft instruction was legally appropriate.

Third, we must determine whether a theft instruction was factually appropriate. The district judge determined that an instruction on theft was not factually appropriate because a weapon was used during the crime.

Vaughan counters that it was factually appropriate. The crime of theft requires the State to prove beyond a reasonable doubt that a defendant, with the intent to permanently deprive the owner of the possession, use, or benefit of the owner's property or services, obtained or exerted unauthorized control over the property or services or obtained control over the property or services by deception or threat. K.S.A. 2013 Supp. 21-5801(a). Vaughan argues that the evidence in his case proves he committed theft by deception. But then he points to the following facts to support his position. He states that he clearly took the money without authorization and he intended to permanently deprive Advantage America of the money. He then points to Alexander's testimony that she was behind him and did not know where the gun was while he was in the safe. In addition, when the cash was obtained from the front drawer, she was in the bathroom counting to 60. In sum, he believes that there was evidence that the theft was not contemporaneous with any threat or violence.

Vaughan presents this argument because he is clearly aware of our existing caselaw that holds that when the taking is accomplished by *contemporaneous* threats or violence, an instruction for theft is not appropriate. See *State v. Sandifer*, 270 Kan. 591, 601, 17 P.3d 921 (2001) (citing *State v. McKinney*, 265 Kan. 104, 114, 961 P.2d 1 [1998]) (theft is not committed where there is evidence the thief has used force to gain possession of the property); *State v. McKinney*, 265 Kan. 104, 114, 961 P.2d 1 (1998) (robbery, not theft when property is not obtained peaceably); *State v. Aldershof*, 220 Kan. 798, Syl. ¶ 3, 556 P.2d 371 (1976) (theft, not robbery when defendant has obtained peaceable possession of the property); *State v. Scott*, 28 Kan. App. 2d 418, 424, 17 P.3d 966 (2001) (when a taking is accomplished by violence to a victim, more than a mere theft has occurred).

14

Here, the undisputed evidence from Vaughan himself was that he pulled the gun on Alexander so that he could scare her and steal money. When he pulled the gun out he pointed it at Alexander and told her not to "press any alarms." He did not dispute that he pointed the gun at her face and chest. He did not put the gun back in his waist band until they reached the safe. When they were at the safe and Alexander asked him what he wanted her to do next, Vaughan could tell she was scared. He did not dispute that he told her he was going to shoot her, he simply stated he could not remember if he said that. She pleaded with him not to hurt her. He testified that he knew she was scared and he told her to go into the bathroom and count to 60.

After a review of all of the evidence in this case, viewed in the light most favorable to Vaughan, no evidence was presented by Vaughan upon his theory of defense which would reasonably have supported his conviction of the lesser crime of theft. The threats of violence were contemporaneous with the taking. Accordingly the trial court did not err in refusing to give the instruction.

But, even if the trial court's failure to give the instruction on theft was error because it was factually appropriate, it was harmless. Since the instruction was requested by Vaughan, the burden is on the State to firmly convince this court that giving of the instruction on theft would not have made a difference to the verdict. The State has met that burden. In its appellate brief, the State reviews the evidence already set out herein. We agree that the evidence is overwhelming and that there is no reasonable possibility that any error contributed to the verdict in this case.

*Giving the jury an instruction for robbery*

Vaughan asserts that the district court erred when it gave the jury a lesser included offense instruction for robbery. Vaughan concedes that he did not object to the instruction at trial and that a clearly erroneous standard applies. Accordingly, the giving of the

instruction will only warrant reversal if the instruction was clearly erroneous. It is only clearly erroneous if Vaughan is able to firmly convince this court that the jury would have returned a different verdict had the instruction not been given. See *Solis*, 305 Kan. at 65.

First, we decide whether the instruction was legally appropriate. Robbery is a lesser included offense of aggravated robbery. *State v. Davis*, 256 Kan. 1, 23, 883 P.2d 735 (1994). The instruction followed the language of the statute. Accordingly, the instruction was legally appropriate.

Next, we examine whether it was factually appropriate. The jury was advised that if it did not agree that the defendant was guilty of aggravated robbery, it may consider the lesser included offense of robbery. To establish the charge, the State was required to prove beyond a reasonable doubt that Vaughan knowingly took property from the presence of Alexander and that the taking was by threat of bodily harm to Alexander. See K.S.A. 2013 Supp. 21-5420(a). This varied from the aggravated robbery instruction and the information in that it did not specifically list the currency taken or the use of a dangerous weapon. Of course, use of a dangerous weapon is not a required element of robbery, so the omission was factually correct. But Vaughan argues that by excluding the property taken—currency—from the robbery instruction, the court broadened the jury instruction, violating his due process rights and resulting in structural error.

A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous. The State is bound by the wording of its charging document. *State v. McClelland*, 301 Kan. 815, 828, 347 P.3d 211 (2015). We fail to see how this instruction was broader than the charging document simply due to the failure to define the property taken as currency. Generally, when we discuss instructions that are overbroad we mean instructions that include alternatives that were not listed in the charging document, thus allowing the jury to convict based on conduct not charged in the

16

information. See 301 Kan. at 829 ("[I]f an instruction adds alternate statutory elements of a crime that were not included in the complaint or information, the instruction is overly broad and, thus, erroneous."); *State v. Hart*, 297 Kan. 494, 508-10, 301 P.3d 1279 (2013) (finding overbroad jury instruction requiring crime of indecent liberties be committed with intent to arouse or satisfy the sexual desires of the victim or defendant or both, but complaint only alleged intent to satisfy the sexual desires of the defendant); *State v. Jones*, 290 Kan. 373, 383-84, 228 P.3d 394 (2010) (finding overbroad jury instruction for aggravated kidnapping that included additional statutory elements beyond what was charged); *State v. Trautloff*, 289 Kan. 793, 801-03, 217 P.3d 15 (2009) (charge was "displaying" an offending photograph or video of a child, but the instruction allowed the jury to convict the defendant of "displaying *or* procuring *or* producing" such a photograph or video; ample evidence at trial that the defendant procured and produced sexually explicit photographs and a video, so the instruction was overbroad); *State v. Hemby*, 264 Kan. 542, 547-50, 957 P.2d 428 (1998) (finding overbroad jury instruction for sodomy that allowed conviction for oral or anal copulation when complaint only charged oral copulation); *State v. Turbeville*, 235 Kan. 993, 997-98, 686 P.2d 138 (1984) (finding overbroad jury instructions for kidnapping that included statutory alternate intents "to terrorize another" and "to facilitate flight" that were not included in complaint).

Here the instruction did not add anything to the charging document. Moreover, the only evidence presented was that Vaughan stole currency. Accordingly, we find the instruction to be factually appropriate.

Finally, even if it was error to give the instruction, we review de novo for harmlessness. Given the evidence presented, Vaughan has not firmly convinced us that the jury's verdict would have been different had the district judge not given the robbery instruction.

17

*Giving a legally defective aggravated robbery instruction*

Vaughan contends that the aggravated robbery instruction was legally defective because the jury was asked to determine his intent to "convert an object [BB gun] into a dangerous weapon," something that is not required by the statute. Although he appeared to generally raise this issue in a pretrial motion to dismiss—with none of the specificity he asserts here, Vaughan did not object at the instruction conference to the aggravated robbery instruction. Accordingly, the giving of the instruction will only warrant reversal if the instruction was clearly erroneous. Vaughan bears the burden of firmly convincing us that the jury would have returned a different verdict had the instruction not been given. See *Solis*, 305 Kan. at 65.

In essence, Vaughan is asserting that the instruction given was not legally appropriate because it did not mirror the language of the statute. As applied to the facts in this case, the charge of aggravated robbery required that the State prove that Vaughan knowingly took property from the presence of Alexander by the threat of bodily harm to Alexander while he was armed with a dangerous weapon. K.S.A. 2013 Supp. 21-5420(b)(1). The statute does not define dangerous weapon. But the court added a definition that described it as "an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury. An object can be a dangerous weapon if the user intended to convince a person that it is a dangerous weapon and that person reasonably believed it to be a dangerous weapon." By adding this definition, Vaughan argues that the crime for which he was charged was greatly expanded. He could be convicted if he *intended* to convince people that his nondangerous weapon was a dangerous weapon.

The instruction given is consistent with the Pattern Instructions for Kansas (PIK) Criminal 4th 54.410 (2016 Supp.). The Notes on Use associated with the instruction in

18

PIK states that "[i]f there is a question as to whether the defendant was armed with a dangerous weapon the bracketed definition should be used." PIK Crim. 54.410 (2016 Supp.) (Notes on Use). It cites to *State v. Colbert*, 244 Kan. 422, 769 P.2d 1168 (1989). In *Colbert*, the Supreme Court reiterated the subjective test when it comes to determining whether a weapon is a dangerous weapon. Like Vaughan, Colbert possessed a defective and inoperable weapon. The *Colbert* court approved of the language contained in *State v. Davis*, 227 Kan. 174, Syl. ¶ 1, 605 P.2d 572 (1980):

> "'In an appeal from a conviction of aggravated robbery . . . the court holds a starter pistol is a dangerous weapon. Since robbery has always involved intimidation or fear, the circumstances of the robbery, including the weapon, are examined from the victim's point of view. An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon.'" *Colbert*, 244 Kan. at 425-26.

Our Supreme Court has continued to support the use of this language in the PIK as a correct statement of the law. See *State v. Holbrook*, 261 Kan. 635, 640, 932 P.2d 958 (1997); see also *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015) (The Supreme Court "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions."). The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). We see no such indication. Accordingly, we find the instruction was legally appropriate.

Next, we examine whether it was factually appropriate. Vaughan does not argue that it was not factually appropriate.

Because we find the instruction both legally and factually appropriate, we need not reach a harmlessness inquiry.

*The charging document was not fatally defective.*

Next, Vaughan argues that the charging document was defective regarding the charge of kidnapping because it did not allege willful or intentional conduct.

A Kansas charging document is required to show that a case has been filed in the correct court and the court has territorial jurisdiction over the crime alleged. If it does not the defect creates a state constitutional error. In addition, it must allege essential facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant. If it does not, a state statutory error is committed. Finally, the charging document is defective when it fails to meet the constitutional standards of providing the defendant with due process and adequate notice of the charges. This third defect, implicates a violation of state and federal constitutional rights. *State v. Dunn*, 304 Kan. 773, 815-16, 375 P.3d 332 (2016).

Challenges to charging documents are treated the same as any other allegation of error. 304 Kan. 773, Syl. ¶ 4. The defendant must properly preserve an objection to the charging document. If not, the defendant has the burden to show that one of the exceptions to the preservation rule applies. 304 Kan. at 819; see *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) (three recognized exceptions:  [1] newly asserted claim involves only question of law arising on proved or admitted facts, determinative of case; [2] consideration of claim necessary to serve ends of justice, prevent denial of fundamental rights; [3] district court right for wrong reason). Our standard of review is de novo. *Dunn*, 304 Kan. at 819.

With this background information at hand, we review Vaughan's claims related to the kidnapping charge.

20

First, Vaughan did properly preserve his objection to the charging document by including it in his pretrial motion to dismiss. So we will proceed to the merits of his claim.

Vaughan contends that the charging document was defective as to the kidnapping charge because it did not allege that he knowingly, willfully, or intentionally kidnapped Alexander. But generally, the charging document shall be considered sufficient if it is "'drawn in the language of the statute'" and states the "'essential facts' constituting the crime charged." *Dunn*, 304 Kan. at 811 (quoting K.S.A. 22-3201[b]). In this case, the instruction mirrored the statute and the appropriate provision of the PIK. See K.S.A. 2013 Supp. 21-5408(a)(2) ("Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . to facilitate flight or the commission of any crime."); PIK Crim. 4th 54.210 (2016 Supp.); see also *Barber*, 302 Kan. at 377-78 (The Supreme Court "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions."). However, the instruction informed the jurors that the State was required to prove that Vaughan knowingly confined Alexander and went on to define the term knowingly. No such language appeared in the charging document.

Clearly our statutes separately require that "[e]xcept as otherwise provided, a culpable mental state is an essential element of every crime . . . . A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly,' or 'recklessly.'" K.S.A. 2013 Supp. 21-5202(a). But as our Supreme Court pointed out in *Dunn* and later in *State v. Rodriguez*, 305 Kan. 1139, 1145, 390 P.3d 903 (2017), the complaint must state the essential *facts* of the crime not necessarily the essential *elements* of the crime. Our Supreme Court has expressly overruled the proposition that a charging document must include all essential *elements* of the charged offense to avoid being insufficient. *Dunn*, 304 Kan. at 811. *Dunn* instructs us to compare the legislature's definition of kidnapping "to the State's factual allegations of

21

the defendant's intention and action." 304 Kan. at 812. In the charging document filed in this case, the State alleged that Vaughan "did unlawfully take or confine [Alexander] by force, threat or deception, with the intent to hold such person to facilitate flight or the commission of a crime." We find that the charging document alleged sufficient facts to put Vaughan on notice of the charges against him.

But even if the charging document was not sufficient, we turn to a harmlessness inquiry to determine whether the defect affected Vaughan's substantial rights. See *Dunn*, 304 Kan. at 821. We have no hesitation in finding that any error was harmless. Vaughan and his counsel clearly understood exactly what the State sought to prove. The facts were straight forward and largely undisputed. The record discloses that Vaughan aimed his testimony at refuting any intent to confine Alexander for any purpose. Accordingly, Vaughan's claim of error fails.

*The State did not commit prosecutorial error during closing statements.*

Vaughan claims the prosecution committed three essential errors during closing statements warranting reversal of his convictions: bolstering Alexander's credibility, misstating the evidence, and misstating the law. Vaughan contends that he was prejudiced by the prosecution's errors and his convictions must be overturned.

Again we begin with the rules that govern our review of Vaughan's claims. Whenever a claim is asserted that any act of a prosecutor has denied a criminal defendant his or her due process rights to a fair trial, the claim and resulting judicial inquiry will be referred to as a claim of "'prosecutorial error.'" *State v. Sherman*, 305 Kan. 88, Syl. ¶ 5, 378 P.3d 1060 (2016). Appellate review of an allegation of prosecutorial error involves a two-step process "simply described as error and prejudice." 305 Kan. 88, Syl. ¶ 6. First, we must decide if the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and obtain a conviction in a manner that

does not offend the defendant's constitutional right to a fair trial. If we find error, we next determine whether the error prejudiced the defendant's due process rights to a fair trial. In this harmless error inquiry, the State must demonstrate there is no reasonable possibility that the error contributed to the verdict. 305 Kan. at 109. "Every instance of prosecutorial error will be fact specific, and any appellate test for prejudice must likewise allow the parties the greatest possible leeway to argue the particulars of each individual case." 305 Kan. at 110.

As to issue preservation, Vaughan made no objections to the State's closing argument at trial; however, such an objection was not necessary to preserve the issue for appeal. A claim of prosecutorial error—based on comments made during voir dire, opening statements, or closing argument (which are not evidence)—will be reviewed on appeal even when a contemporaneous objection was not made at the trial level. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012). Further, a misstatement of controlling law must be reviewed on appeal, regardless of a timely objection at trial, to protect a defendant's right to due process. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006).

With these standards firmly in mind, we will review each claim of error.

*Bolstering witness credibility*

Vaughan contends that the State improperly made statements during closing argument that bolstered Alexander's credibility with the jury. The Kansas Supreme Court has consistently held that it is "improper for a prosecutor to attempt to bolster the credibility of the State's witnesses." *State v. Donaldson*, 279 Kan. 694, 708, 112 P.3d 99 (2005).

The State argued in its rebuttal closing that Alexander had no reason to fabricate any part of her testimony, Alexander did not exaggerate as she even testified that Vaughan was "really nice to her other than pulling a weapon on her," and the jurors should use their common sense to determine what happened behind the partition and outside the view of the security cameras.

"The latitude given to the State includes 'explaining to juries what they should look for in assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses.'" *State v. Sprague*, 303 Kan. 418, 428-29, 362 P.3d 828 (2015) (quoting *State v. McReynolds*, 288 Kan. 318, 325, 202 P.3d 658 [2009]). The prosecutor's argument regarding Alexander's testimony was part of the State's rebuttal after the defense argued in closing that the jurors had two accounts of what went on behind the partition and it was up to them to determine what happened. It is not improper for a prosecutor to comment during closing argument on a witness' motivation, or lack thereof, to be untruthful. *State v. Armstrong*, 299 Kan. 405, 427, 324 P.3d 1052 (2014).

Based on the record, the prosecutorial act complained of does not fall outside the wide latitude afforded prosecutors to conduct the State's case. See *Sherman*, 305 Kan. at 109. The State did not commit a prosecutorial error by focusing the jury's attention on evidence that tended to show that Alexander lacked the motivation to fabricate her testimony.

*Misstating the evidence*

The prosecutor started closing argument by reminding the jurors that they had "seen these crimes committed via the videotape," they had "heard the defendant admit that he committed these crimes via his statement to the police," and they had heard him "admit to committing these crimes today on the stand." She then goes through each element and highlights the evidence that supports each element. The prosecutor advises

24

the jurors that they can tell by viewing the videotape of the incident that the property was taken from Alexander's presence. Next, she points out that Vaughan testified that he was going to go into the business and pull a gun on Alexander in order to get money and that is what he did. Finally, she pointed to the fact that Vaughan testified that he intended Alexander to believe he had a real firearm and she did.

Vaughan contends that the State mischaracterized his testimony in its closing argument, i.e., he did not admit to aggravated robbery but to an intent to "snatch-[and]-grab."

Review of the State's closing argument does not reflect that the State misstated any evidence. The State encouraged the jurors to review the evidence and the instructions and apply the facts to the law. This was well within the wide latitude afforded prosecutors.

*Misstating the law*

Vaughan also contends that the State erred when it said that the elements of the crimes did not require that he verbally threaten Alexander but also argued that Vaughan threatened Alexander to stay in the bathroom. Vaughan appears to conflate the State's argument regarding the elements of the aggravated robbery and the elements of kidnapping. While the record demonstrates that Vaughan did not physically harm Alexander, and that he hoped talking to her would prevent her from being too scared, the presence of the weapon and his pointing it at her was sufficiently threatening of bodily harm to meet the elements of both aggravated robbery and kidnapping. Nevertheless, when it came to making sure Alexander stayed in the bathroom long enough for him to get the money out of the front drawer and allow him to escape, Vaughan verbally threatened her by telling her she would be shot if she came out of the bathroom too soon. This was sufficient to confine her to facilitate his flight, meeting other elements of kidnapping. See K.S.A. 2013 Supp. 21-5408; K.S.A. 2013 Supp. 21-5420.

25

This was not a misstatement of the law. The prosecutorial act complained of does not fall outside the wide latitude afforded prosecutors to conduct the State's case.

In sum, we find that no prosecutorial error was committed in closing argument.

*Vaughan has failed to establish that he suffered substantial prejudice from the State's violation of the order in limine.*

Prior to trial, Vaughan filed a motion to exclude prior criminal history. The State stipulated to the motion and stated it had no intention of introducing evidence of prior bad acts under K.S.A. 2013 Supp. 60-455.

At trial, United States Marshall, Christopher Johnson, a warrant coordinator for the Federal Fugitive Task Force, testified that he began a coordinated search for Vaughan approximately five days after the robbery. As part of his efforts, he contacted a known associate of Vaughan's, a Willie Davison. Under direct examination, the State asked Johnson:

> "Q. Who did you understand [Davison] to be?
> "A. Mr. Davison—I believe his name's Davison, was incarcerated with the defendant earlier—in past years."

Vaughan's defense counsel did not object to the State's question, nor did she object to Johnson's response regarding Davison and Vaughan knowing each other through a previous period of incarceration. There were no more references to Vaughan's prior incarceration. Defense counsel did not object until after the State rested its case and the parties debated the defense's renewed motion to dismiss the charges, discussed proposed jury instructions, argued about amendments to the information, and discussed time allotments for closing statements. It was at this point that defense counsel stated, "Judge,

26

I think it would be appropriate for me to ask for a mistrial at this time." She cited the order in limine and the prejudicial nature of the testimony regarding Vaughan's prior incarceration as her reasons. She also indicated that she did not want the jury admonished because she did not want to draw attention to the matter.

The prosecutor indicated that she had discussed Johnson's testimony with him before trial and made him aware that he was not to mention any prior bad acts. She believed, in response to her question, Johnson was going to say that Davison stated that he was at Vaughan's house the day before the incident at Advantage America. After hearing statements of counsel, the district court ruled that the prosecutor did not intend to elicit the information and that it was at most a fleeting reference. In addition, the district judge noted that the defendant's own statement, which was published to the jury (although not included in the record on appeal), stated that he had a prior period of incarceration. Accordingly, the district judge found that Vaughan was not prejudiced by the statement. The judge also confirmed that Vaughan was not requesting a curative instruction or that the jury be admonished.

First, we must determine if this claim of error was properly preserved. A contemporaneous objection must be made to all evidentiary claims—including questions posed by a prosecutor and responses to those questions—to preserve the issue for appellate review. *State v. Raskie*, 293 Kan. 906, 914, 269 P.3d 1268 (2012); see *State v. Decker*, 275 Kan. 502, 507, 66 P.3d 915 (2003) (if a party's motion in limine is granted to exclude the admission of certain evidence at trial, but the party does not object to the admission of such evidence at trial, then the issue is not preserved on appeal). In this case, Vaughan did not raise a contemporaneous objection to the prosecution's question or Johnson's answer. Vaughan's attempt to avoid the trial objection requirement by reframing the issue as prosecutorial misconduct or error is not persuasive. See *State v. Drayton*, 285 Kan. 689, 695, 175 P.3d 861 (2008).

27

But even assuming, without deciding, that raising the issue before the close of trial that day was sufficient, Vaughan's claim still fails.

When a party alleges that an order in limine has been violated, the district court must determine (1) whether the order has been violated, and if so, (2) whether the party alleging the violation has established substantial prejudice resulting from that violation. . The defendant bears the burden of establishing substantial prejudice. *State v. Johnson*, 284 Kan. 18, 29-30, 159 P.3d 161 (2007). Because the district court is in the best position to determine whether a violation occurred and to determine the degree of prejudice any violation may have caused, the district court's determination on these matters will not be disturbed absent a clear showing of an abuse of discretion. See 284 Kan. at 30. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

In this case, the district judge seems to have assumed that the order in limine was violated, because he focused his review on the prejudice factor. He found there was no substantial prejudice to Vaughan because the reference was unintentional and fleeting. Moreover, the judge advised the parties that the jury already had evidence before it in the form of Vaughan's own statements that he had been in jail. Vaughan argues that the district judge misquoted this evidence. Vaughan contends that he only referenced the fact that he was in jail at the time of the recorded statement. Unfortunately, the recorded statement referenced by the district judge in his decision is not part of the record on appeal. A party asserting that prejudicial error has occurred has the burden of designating a record that affirmatively shows the error. *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015). With no evidence to the contrary, we must assume the district judge's statement is accurate.

Given the reasons stated by the district judge for his decision, we are unable to find that no reasonable person would have taken the position of the trial court. As such, the district judge did not abuse his discretion.

Vaughan also claims for the first time on appeal that the photo lineup admitted at trial alluded to his criminal history. However, this issue was clearly not preserved for appeal. No contemporaneous objection was made during any of the testimony related to the lineup. It was not mentioned during the discussion of the motion for mistrial. Moreover, nothing in the record on appeal supports a conclusion that the lineup alluded to criminal history. Again, a party asserting that prejudicial error has occurred has the burden of designating a record that affirmatively shows the error. 302 Kan. at 128.

*Because there were no errors, there can be no cumulative error.*

As a final matter, Vaughan alleges cumulative errors in this case, which he contends warrant reversal of his convictions. However, the court will find no cumulative error when the record fails to support the errors defendant raises on appeal. *Marshall*, 303 Kan. at 451. In this case, as discussed above, the record fails to support the errors Vaughan raises in his appeal. Even if an error is found, a single error cannot constitute cumulative error. *State v. Houston*, 289 Kan. 252, 277, 213 P.3d 728 (2009).

Vaughan's convictions for aggravated robbery and kidnapping are affirmed.

Affirmed.